UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 14-cr-0621 JM |
|---|---|
| Plaintiff, | ORDER DENYING MOTION TO SUPPRESS EVIDENCE OBTAINED FROM CELL PHONES |
| vs. | |
| RIGOBERTO GARCIA-ALVAREZ, | |
| Defendant. | |

This order addresses Defendant's motion to suppress the evidence obtained by searching his cell phones pursuant to a warrant. (Doc. No. 34.) For the reasons set forth below, the motion is denied.

## BACKGROUND[1]

Defendant was arrested shortly after midnight on February 12, 2014, at the San Ysidro Port of Entry after agents found a large quantity of methamphetamine hidden in his car. At the time of the arrest, agents seized three cell phones that he had with him. During a post-arrest interview, he said that two of the phones were his, but that he had found the third phone at a casino.[2] He was subsequently charged under 21 U.S.C. §§ 952 and 960 with importation of methamphetamine.

---

[1] The facts in this section are drawn from Defendant's motion and exhibits, (Doc. No. 34 & Exhs. A & B), and the government's opposition, (Doc. No. 40).

[2] Defendant's statements are the subject of a separate motion to suppress, which the court has deferred ruling on. However, the statements noted here were made before the statements that are the basis of that motion. (See Doc. No. 31, Exh. A at 20–21, 24.)

1  On May 9, 2014, the government applied for and obtained a warrant to extract
2  and analyze the data from the cell phones.  It was to be executed by May 23, 2014.
3  The supporting affidavit set forth the circumstances of Defendant's arrest,
4  explained that narcotics smugglers commonly use cell phones to communicate
5  instructions on how to cross the border and where and when to deliver the
6  controlled substances, and asserted that information in the phones was likely to
7  identify Defendant's criminal associates and communications relevant to his crime.
8  As to the methods that would be used, the affidavit stated:

> 13. Following the issuance of this warrant I will collect the subject cellular telephones, and subject them to analysis.  All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.
>
> 14. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months.  The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

(Doc. No. 34, Exh. A at 10–11.)[3]

The warrant also described the objects of the search:

> 1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:
>
>    a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;
>
>    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to delivery [sic] controlled substances from Mexico to the United States;
>
>    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

---

[3] Citations to the exhibits refer to the page numbers at the top of each page.

|    |    |    |
|----|----|----|
| 1  | d. | tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points; |
| 2  |    |    |
| 3  |    |    |
| 4  | e. | tending to identify the user of, or persons with control over or access to, the subject phone; or |
| 5  | f. | tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above. |
| 6  |    |    |

7  (Id. at 14.)

8  An agent named Hakala extracted and analyzed the data on August 4, 2014.
9  According to Defendant, none of the messages or pictures contained any reference
10 to drug trafficking, and, to date, the government has not disclosed evidence that any
11 phone number discovered during the search was involved in drug trafficking.

12                              **DISCUSSION**

13 Defendant contends that the evidence from the search must be suppressed
14 and the phones must be returned because the search violated Federal Rule of
15 Criminal Procedure 41 and the warrant was defective.  The court takes each issue
16 in turn.

17 **A.    Federal Rule of Criminal Procedure 41**

18 Federal Rule of Criminal Procedure 41 requires warrants to be executed
19 "within a specified time no longer than 14 days." Fed. R. Crim. P. 41(e)(2)(A)(i).
20 Consistent with Rule 41, the warrant required agents to execute it on or before
21 May 23, 2014.  Defendant contends that agents violated Rule 41 because they did
22 not conduct the forensic imaging and data copying until months later, on August 4,
23 2014. (Doc. No. 34-1 at 2–3.)
24 The government counters that although Rule 41 provides that an electronic
25 storage device must be seized within the 14 days allowed by the warrant, it
26 expressly provides that the government may copy and review the data at a later
27 date consistent with the warrant. (Doc. No. 40 at 6.)  Hence, according to the
28 government, the later copying and inspection of the data was consistent with the

warrant, which stated: "The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this Court." (Doc. No. 34, Exh. A at 11.)

The relevant portion of Rule 41 provides:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. <u>Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review</u>.

Fed. R. Crim. P. 41(B) (emphasis added). Rule 41 thus provides that electronic storage devices must be seized or copied at the site of seizure ("on-site") within the 14 days allowed for execution of the warrant, and may be copied and reviewed later at another location ("off-site"), so long as the later copying and review are consistent with the warrant.

In this case, the data was extracted and reviewed 88 days after the warrant issued, within the 90 days the warrant allowed. The search of the phones was, therefore, consistent with Rule 41 and the warrant, and Defendant is not entitled to the return of his phones or suppression of the evidence under Rule 41.

**B.    The Fourth Amendment**

Second, Defendant contends that the warrant to search his phones was invalid in light of <u>Riley v. California</u>, —U.S.—, 134 S. Ct. 2473 (2014), which recently recognized a privacy interest in the digital information contained in cell phones. See <u>id.</u> at 2489–91. Because there is a privacy interest in cell-phone data, <u>Riley</u> held, the government generally may not search cell phones without a warrant. See <u>id.</u> at 2493.

Here, of course, there was a warrant, but Defendant contends that it was invalid because it was insufficiently particular and overbroad, so that it resulted in an impermissible exploratory rummaging through his personal information. (Doc. No. 34-1 at 3–17.)

The Warrant Clause of the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To satisfy these requirements, a warrant must comply with two distinct rules. First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the types of items to be seized; second, it must be limited by the probable cause upon which the warrant is based. See United States v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir. 2009). These aspects of specificity are referred to as "particularity" and "breadth." Id. Evidence obtained pursuant to a warrant that violates either requirement must generally be suppressed, unless an exception to the exclusionary rule applies, such as the exception for "a search conducted in good faith reliance upon an objectively reasonable search warrant." Id. at 706 (internal quotation marks omitted).

Defendant identifies two main defects with the warrant that he contends require suppression under these principles. The court takes each of them in turn.

### 1.     Overly General Descriptions

First, Defendant contends that the words "including but not limited to" and "tending to" that the warrant used to describe the information to be searched for gave searchers too much discretion and did not put meaningful restrictions on the search. (Doc. No. 34-1 at 5–9.) He contends that by the time the government applied for the warrant, it had already searched at least one phone, interviewed most of his family, and searched his home and cars. (Id. at 9.) At that point, he asserts, the government could (and should) have crafted a description based on the people or phone numbers Defendant had been communicating with in the period before his arrest. (Id.)

The government counters that the use of such phrases does not render a warrant *per se* unreasonable, and that the Ninth Circuit has rejected similar

arguments when context limited the scope of the search. (Doc. No. 40 at 9.) For example, in United States v. Reeves, 210 F.3d 1041 (9th Cir. 2000), the words "may include, but is not limited to," and "other items" did not make a warrant impermissibly overbroad because context made clear that the search was for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine." Id. at 1046. And in United States v. Shi, 525 F.3d 709 (9th Cir. 2008), the words "including, but not limited to" did not make a warrant insufficiently particular because it authorized a search of only the limited area the defendant inhabited. See id. at 731.

Similarly, in this case, context provided by the warrant limited the search to a limited area—the contents of Defendant's cell phones—and plainly directed searchers to look for information relevant to drug trafficking and to identifying Defendant's communications, movements, and co-conspirators.[4] That information bore directly on the crime for which he was arrested. Indeed, the warrant's words "tending to" are functionally identical to the words the Federal Rules of Evidence use to define the test for relevance: "Evidence is relevant if . . . it has *any tendency* to make a fact [of consequence] more or less probable." Fed. R. Evid. 401 (emphasis added).

Moreover, the court is not persuaded that the warrant should have limited the search to recent data, as Defendant asserts it should have, based on interviews with his family and searches of his home and car. Defendant does not contend that the evidence the government had at that point suggested that his smuggling activities were only recent. Absent some information to that effect, it was not necessary to limit the search to recent data.

Consequently, the court concludes that the language Defendant objects to did not render the warrant insufficiently particular or overbroad.

---

[4] The full text of the search description is duplicated in the Background section.

**2. Insufficient Search Methodology**

Second, Defendant contends that the warrant was insufficiently particular and overbroad because it lacked a sufficient methodology. (Doc. No. 34-1 at 9–15.) Specifically, he objects that the warrant did not identify why a full-blown forensic search was justified, did not limit the search to newer data, did not provide a method for segregating unreviewable data, did not provide specific guidance on how to determine which data had a nexus to the crime, did not indicate whether the government would image the device, and did not account for the segregation, return, or destruction of data that fell outside the scope of the warrant. (Id.) For these points he relies largely on In re Nextel Cellular Telephone, in which a Kansas magistrate judge denied an application for a warrant for similar reasons. See 2014 WL 2898262 (D. Kan. June 26, 2014).

Nextel is not binding on this court, however. And, while the measures Defendant describes may be desirable, they are not required in this circuit or under the facts of this case. It is worth noting at the outset that although Riley recognized a privacy interest in cell-phone data and required warrants to search cell phones, see 134 S. Ct. at 2489–91, 2493, it did not require any specific protocol. Hence, it did not overrule preexisting Ninth Circuit precedent on electronic searches.

Here there are several cases in point. First, in United States v. Hill, 459 F.3d 966 (9th Cir. 2006), a child-pornography defendant argued that the warrant to search his computer was overbroad because it did not include a search protocol sufficient to limit searchers' discretion. See id. at 977–78. The Ninth Circuit rejected that argument, stating, "As we have noted, we look favorably upon the inclusion of a search protocol; but its absence is not fatal." Id.

The Ninth Circuit has revisited the issue at least twice since then and still declined to require a specific search protocol, while at the same time recognizing that electronic data poses unique challenges in the Fourth Amendment context. In United States v. Comprehensive Drug Testing, Inc. ("CDT"), 621 F.3d 1162

(9th Cir. 2010) (en banc) (per curiam), Judge Kozinski filed a concurring opinion that offered "guidance" for warrants for digital searches. See id. at 1179–80. But the guidance was not accepted by a majority of the court.

And, in United States v. Schesso, 730 F.3d 1040 (9th Cir. 2013), a child-pornography case, the Ninth Circuit did not suppress evidence obtained by means of a broad warrant to seize and search the defendant's computer system and all of his digital storage devices, despite his argument that the warrant was defective for lack of a sufficient search protocol. See id. at 1047–50. The court concluded that because CDT did not "cast the search protocols in constitutional terms, . . . judicial officers cannot be faulted for not following protocols that were not binding on them, and law enforcement officers cannot be faulted for relying on a warrant that did not contain the non-binding protocols." Id. at 1051. Accordingly, the warrant at issue in the case was not defective for lack of a search protocol, and, even if it had been, the good-faith exception applied. See id. at 1050–51.

In sum, "Defendant's contention that a search protocol was required is contrary to the law in the Ninth Circuit." United States v. Nazemzadeh, 2013 WL 544054, at *5 (S.D. Cal. Feb. 12, 2013). Although it may have been better if the warrant had included a search protocol that minimized unnecessary intrusion into Defendant's personal data, here, as in Hill and Schesso, the absence of such a protocol did not render the warrant constitutionally defective, and agents were entitled to rely on it.

Defendant's contentions, therefore, provide no basis for suppressing the evidence and fruits obtained from the searches of his cell phones.

## CONCLUSION

Defendant's motion to suppress evidence obtained from his cell phones and for the return of the phones, (Doc. No. 34), is DENIED. If the government plans to use any materials obtained from the phones at trial, it must notify Defendant and
///

the court by **_Wednesday, February 25, 2015_**, so that the court can address any additional issues the evidence may raise.

IT IS SO ORDERED.

DATED: February 24, 2015

_____
Hon. Jeffrey T. Miller
United States District Judge